UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DYANNE KESSLER,

                    Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                  Defendant.

CASE NO. C17-1783 BHS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

## I.   BASIC DATA

Type of Benefits Sought:

    ( X ) Disability Insurance

    ( X ) Supplemental Security Income

Plaintiff's:

    Sex:  Female

    Age:  47 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff:  Anxiety disorder; panic attacks; agoraphobia; social anxiety; depression; stress; gastrointestinal issues (irritable bowel syndrome) because of the other listed issues.  AR at 82.

Disability Allegedly Began:  August 7, 2013

Principal Previous Work Experience:  Data entry clerk; legal assistant; booking clerk; receptionist; sales clerk.

Education Level Achieved by Plaintiff:  High school diploma.

## II.  PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ"):

Date of Hearing:  June 9, 2016

Date of Decision:  July 28, 2016

Appears in Record at:  AR at 20-32

Summary of Decision:

> The claimant has not engaged in substantial gainful activity since August 7, 2013, the alleged disability onset date.

> The claimant has the following severe impairments:  post-traumatic stress disorder ("PTSD")'; generalized anxiety disorder; and affective disorder.

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926).

> After careful consideration of the entire record, the ALJ found that the claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:  the claimant can understand and remember simple and familiar, as well as routine, complex tasks.  She can maintain concentration, persistence, and pace of simple, repetitive tasks, and semi-skilled tasks for two hours at a time with normal breaks.  Her concentration, persistence, and pace may be diminished at times due to anxiety, but not so much as to preclude productive activities in a competitive employment environment.  She will do best in a position with superficial public contact.  She can interact with coworkers in a work setting with supervision.  She can have slow-paced changes in a work setting.

> The claimant is capable of performing past relevant work as a data entry clerk.  While not considered past relevant work, the claimant has learned the job of animal caretaker sufficiently to be able to perform it as well.  This work does not require the performance of work-related activities precluded by the claimant's RFC.

The claimant has not been under a disability, as defined by the
Social Security Act, from August 7, 2013, through the date of this decision
(20 C.F.R. §§ 404.1520(f) & 416.920(f)).

Before Appeals Council:

Date of Decision:  September 26, 2017

Appears in Record at:  AR at 1-3

Summary of Decision:  Denied review.

### III.  PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by ( X ) Plaintiff   ( X ) Commissioner

### IV.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

denial of Social Security benefits when the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than

a preponderance, and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and resolving any other

ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

While the Court is required to examine the record as a whole, it may neither reweigh the

evidence nor substitute its judgment for that of the ALJ.  *See Thomas v. Barnhart*, 278

F.3d 947, 954 (9th Cir. 2002).  "Where the evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

The claimant, Dyanne Kessler ("Kessler"), bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI. ISSUES ON APPEAL

Whether the ALJ properly evaluated Kessler's symptom testimony.

Whether the ALJ properly evaluated the medical evidence, including the opinions of:

1.      Phyllis Sanchez, Ph.D.;

2.      Melanie E. Mitchell, Psy.D.;

3.      Cynthia Collingwood, Ph.D.; and

4.      Heidi Street, LICSW.

Whether, if the ALJ committed reversible error, the matter should be remanded for an award of benefits.

## VII.  DISCUSSION

### A.    The ALJ Partially Erred in Assessing Kessler's Symptom Testimony

Kessler challenges the ALJ's rejection of her symptom testimony.  *See* Pl. Op. Br. (Dkt. # 9) at 1.  The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged.  *Id.*  The ALJ found that Kessler met this step because her medically determinable impairments could reasonably be expected to cause the symptoms she alleged.  AR at 26.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing

reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that Kessler's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." AR at 26-27. The ALJ gave four reasons for this determination: (1) Kessler's daily activities contradicted her symptom testimony; (2) Kessler left her prior job for non-disability-related reasons; (3) Kessler collected unemployment benefits during some of her alleged disability period; and (4) Kessler failed to report income to the Washington Department of Social and Health Services ("DSHS"), from which she was receiving temporary state disability benefits. *Id.* at 28.

### 1. The ALJ Partially Erred in Rejecting Kessler's Testimony Based on a Finding That It Was Contradicted by Her Daily Activities

The ALJ's primary reason for rejecting Kessler's symptom testimony was because Kessler's daily activities contradicted her allegations regarding the severity of her symptoms. An ALJ may reasonably discount a claimant's symptom testimony when it is contradicted by the claimant's daily activities. *See Fair*, 885 F.2d at 603. But "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th

Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)) (alterations in original).  The plaintiff's daily activities must contradict her testimony or reflect transferable work skills.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

Kessler made two primary allegations in her symptom testimony.  First, Kessler testified that she has times that she cannot leave the house or be around people due to disabling anxiety, agoraphobia, and panic attacks.  AR at 51.  Second, she testified that she cannot maintain concentration, persistence, or pace because of her symptoms.  *Id.*

The ALJ reasonably rejected Kessler's allegations that she cannot leave her house or be around other people because Kessler's activities contradicted those allegations.  Kessler admitted that she works part-time as a dog watcher, which requires her to travel to her friend's house and help care for around 10-12 dogs.  *See id.* at 27-28, 54-56.  Kessler takes the bus to and from this job, which she attends two to three times per week.  *Id.* at 28, 57.  Kessler further admitted that she does something social, such as meet with friends "for a drink or coffee," about once a week.  *Id.* at 28, 67-68, 253.  She shops for food and hygiene products two to three times a week.  *Id.* at 27, 252.  The ALJ rationally interpreted this evidence as contradicting Kessler's testimony that she cannot leave her house or be around people at times, and that determination must be upheld.  *See Thomas*, 278 F.3d at 954.  The ALJ thus did not err in rejecting this portion of Kessler's testimony.

The ALJ erred, however, in rejecting Kessler's testimony that she cannot maintain concentration on tasks because of her symptoms.  The ALJ noted that Kessler "testified to playing video games, knitting, and cleaning the house, which are activities that require

at least some level of concentration, persistence, and pace." AR at 27, 66, 250. Kessler

further admitted that she could pay bills, count change, handle a savings account, and use

a checkbook or money orders. *Id.* at 25, 252. The amount of concentration necessary to

perform these tasks is so minimal that the ALJ could not reasonably correlate it to the

level of concentration necessary to maintain focus in a work setting on work assignments.

*See Orn*, 495 F.3d at 639 (holding that the ALJ erred in rejecting the claimant's

testimony as contradicted by his daily activities because "reading, watching television,

and coloring in coloring books are activities that are so undemanding that they cannot be

said to bear a meaningful relationship to the activities of the workplace"). The ALJ thus

erred in rejecting Kessler's testimony regarding her ability to maintain concentration,

persistence, and pace due to her symptoms.

2.     **The ALJ Erred in Rejecting Kessler's Testimony Based on Her Departure from Her Last Job**

The ALJ rejected Kessler's overall symptom testimony because statements she

made during the hearing suggested she left her last job due to a change in management,

and not necessarily due to her disability. *See* AR at 27. A claimant's decision to leave

work for reasons unrelated to a claimed disability may be a clear and convincing reason

to find a claimant's testimony unreliable. *See Bruton v. Massanari*, 268 F.3d 824, 828

(9th Cir. 2001). But the record does not support the ALJ's position. Kessler testified that

she left her last job because there was a management shift that increased her stress level

and caused her to have "panic attacks three or four times a week, anxiety, [and irritable

bowel syndrome]." AR at 48. The ALJ thus erred in rejecting Kessler's testimony based on her departure from her prior job.

### 3. The ALJ Erred in Rejecting Kessler's Testimony Based on Her Receipt of Unemployment Benefits

The ALJ also rejected Kessler's symptom testimony because she collected unemployment benefits during a portion of her alleged disability period. *See id.* at 28, 217. "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . ." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). But that is only true if the individual is holding herself out as available for full-time—as opposed to part-time—work. *See Carmickle*, 533 F.3d at 1162.

The record here does not establish whether Kessler held herself out as available for full-time or part-time work when she collected unemployment benefits. To collect unemployment benefits under Washington law, and individual must be "able to work" and "available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." Wash. Rev. Code § 50.20.010(1)(c). But Washington law allows individuals to receive unemployment benefits even when they are only seeking part-time work. *See* Wash. Rev. Code § 50.20.119. The evidence in the record establishes only that Kessler received unemployment benefits; it does not establish whether she held herself out as available for full- or part-time work. *See* AR at 46, 54, 217. The ALJ therefore erred in rejecting Kessler's symptom testimony based on her

receipt of unemployment benefits during the alleged disability period.  *See Carmickle*,

533 F.3d at 1161-62; *Burke v. Colvin*, 649 F. App'x 495, 496 (9th Cir. 2016).

### 4.   The ALJ Erred in Rejecting Kessler's Testimony Based on Her Failure to Report Income to DSHS

The ALJ lastly rejected Kessler's symptom testimony because she received

income during the alleged disability period, but did not report that income to DSHS.  AR

at 28.  The ALJ concluded that Kessler's failure to report her income "suggest[ed] a

willingness to be less than honest and forthcoming with the state in the receipt of

benefits," and "suggest[ed] a similar willingness to do so in this proceeding."  *Id.*

Once again, the ALJ's reasoning is not supported by substantial evidence in the

record.  The record contains no information regarding the type of benefits Kessler was

receiving.[1]  Some state benefits do not require recipients to report income unless it

exceeds a certain threshold.  *See, e.g.*, Wash. Admin. Code 388-418-0005(1)(a)(iii),

(2)(a).  The fact that Kessler did not report her income therefore does not establish

whether she was or was not truthful with DSHS.  Accordingly, this not a clear and

convincing reason to reject her symptom testimony.

### 5.   The ALJ's Errors Were Harmful

The ALJ's rejection of Kessler's testimony regarding her ability to maintain

concentration, persistence, and pace cannot be considered harmless.  The Court cannot

---

[1] Kessler admitted to receiving food stamps, but the record does not establish what other state benefits she was receiving.  *See* AR at 43-44.  The ALJ asked Kessler if she was receiving a "general assistance grant," to which Kessler responded only that she was "getting $120 a month," presumably from the state of Washington.  *See id.* at 44.

consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Here, the Court is unable to say that the ALJ would have reached the same conclusion if she had correctly evaluated Kessler's symptom testimony regarding her ability to maintain concentration, persistence, and pace. The ALJ's errors were therefore harmful, and her decision must be reversed.

**B.    The ALJ Erred in Assessing the Medical Evidence**

Kessler also challenges the ALJ's assessment of the medical evidence. Pl. Op. Br. at 1. She argues that the ALJ erred in giving greater weight to state agency consultant Cynthia Collingwood, Ph.D. than examining psychologists Phyllis Sanchez, Ph.D. and Melanie Mitchell, Psy.D. *Id.* at 6-8. More accurately framed, the issues are whether the ALJ gave valid reasons for discounting the opinions of Dr. Sanchez and Dr. Mitchell, and, if so, whether the ALJ reasonably accepted Dr. Collingwood's opinions.

Kessler further argues that the ALJ erred in assessing a lay statement from her mental health therapist, Heidi Street, LICSW. The Court addresses the ALJ's treatment of each source in turn.

**1.    The ALJ Erred in Discounting Dr. Sanchez's Opinions**

Dr. Sanchez examined Kessler on August 26, 2013. AR at 301. She conducted a clinical interview and mental status exam. *Id.* at 301, 304. Dr. Sanchez diagnosed Kessler with panic disorder with agoraphobia, marked; and generalized affective disorder, "marked at the present." *Id.* at 302. She opined that Kessler had marked

limitations in her ability to maintain a regular work schedule, adapt to changes in the work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal work day and week without interruptions from her psychological symptoms. *Id.* at 303.

The ALJ assigned "limited" weight to Dr. Sanchez's opinions. *Id.* at 29. In the RFC, the ALJ limited Kessler to slow-paced changes in the work setting based on Dr. Sanchez's report. *Id.* at 26, 29. The ALJ otherwise discounted Dr. Sanchez's opinions because: (a) they were contradicted by Kessler's daily activities; (b) Dr. Sanchez's report "lack[ed] . . . clarity regarding any possible effects of substance use"; (c) Dr. Sanchez did not review any of Kessler's past medical records; and (d) Dr. Sanchez relied on Kessler's "self-reports of her medical history and current functioning." *Id.*

To reject the opinion of an examining doctor, even if it is contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). The court may also draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

### a. Contradiction by Kessler's Daily Activities

A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting the doctor's opinion. *See, e.g.,*

*Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); *Morgan*, 169 F.3d at 601-02 (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's daily activities).

The ALJ's reasoning here falls prey to the same issues as her rejection of Kessler's symptom testimony. The ALJ reasonably rejected Dr. Sanchez's opinions as they related to Kessler's ability to maintain attendance and interact with other people. *See supra* Part VII.A.1. But the ALJ erred in rejecting Dr. Sanchez's opinions related to Kessler's ability to maintain concentration, persistence, and pace. *See id.* The ALJ thus partially erred in rejecting Dr. Sanchez's opinions as contradicted by Kessler's daily activities.

### b. Lack of Clarity Regarding Possible Substance Use

The ALJ's next reason for discounting Dr. Sanchez's opinion has no merit.[2] The ALJ did not find that alcohol use impacted Kessler's function. *See* AR at 24. Instead, she noted that Kessler reported to Dr. Sanchez that she "drinks weekly to every few days, a glass of wine or so." *Id.* at 28, 301. Dr. Sanchez, knowing this information, subsequently opined that Kessler's impairments were not the result of alcohol or drug use. *See id.* at 303. The ALJ gave no explanation as to what was unclear about this portion of Dr. Sanchez's opinions, nor did the ALJ at any point find that Kessler abused

---

[2] The Commissioner acknowledges this error, as she concedes that she "does not rely on this reason." *See* Def. Resp. Br. (Dkt. # 10) at 12 n.5.

substances in a way that impacted her function.  *See id.* at 24, 28-29.  The ALJ thus erred

in rejecting Dr. Sanchez's opinions based on a lack of clarity regarding substance use.

### c.    Failure to Review Prior Medical Records

The ALJ's next reason for rejecting Dr. Sanchez's opinions was similarly

unexplained.  *See id.* at 28.  An ALJ may reject a doctor's opinions when the ALJ

reasonably finds that the doctor is unaware of the claimant's full diagnostic picture.  *See*

20 C.F.R. § 404.1527(c)(6) (stating that the extent to which a doctor is familiar with the

claimant's overall case record is a relevant factor in weighing the doctor's opinion);

*Courtney v. Astrue*, No. C12-453-JCC-BAT, 2012 WL 6044659, at *5 (W.D. Wash. Nov.

5, 2012) (holding that "the ALJ's finding that [a doctor] was unaware of [the claimant's]

full diagnostic picture, which included drug abuse, was a specific and legitimate reason to

discount the doctor's opinions").  But the ALJ did not identify any aspect of Kessler's

medical history or full diagnostic picture that conflicted with Dr. Sanchez's opinions.

*See* AR at 28-29.  The fact that Dr. Sanchez did not review all of Kessler's medical

history was not, standing alone, a specific and legitimate reason to reject Dr. Kessler's

opinions.  *Cf. Ernst v. Colvin*, 601 F. App'x 474, 477 (9th Cir. 2015) (holding that the

ALJ erred in assigning little weight to a doctor's opinion based on her failure to review

specific test results when a review of those results would not have contradicted the

doctor's opinions).  The ALJ thus erred in rejecting Dr. Sanchez's opinions on this basis.

### d.    Reliance on Kessler's Self-Reports

An ALJ may justifiably discount a treatment provider's opinions if they "are based

'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ

finds the applicant not credible." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)

(quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). "However, when

an opinion is not more heavily based on a patient's self-reports than on clinical

observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d

at 1162 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008));

*see Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

Here, Dr. Sanchez's opinions were based on more than Kessler's self-reports, as

Dr. Sanchez conducted a clinical interview and mental status exam. AR at 301, 304.

"[C]linical interview[s] and . . . mental status evaluation[s] . . . are objective measures

and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th

Cir. 2017). Furthermore, psychiatric evaluations "will always depend in part on the

patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." *Id.*

(citation and internal quotation marks omitted). "Thus, the rule allowing an ALJ to reject

opinions based on self-reports does not apply in the same manner to opinions regarding

mental illness." *Buck*, 869 F.3d at 1049. The ALJ therefore erred in rejecting Dr.

Sanchez's opinion as too heavily based on Kessler's self-reports.

### 2.     The ALJ Erred in Discounting Dr. Mitchell's Opinions

Dr. Mitchell examined Kessler on March 24, 2014. AR at 308. She reviewed Dr.

Sanchez's report, conducted a clinical interview and mental status exam, and

administered several psychological tests. *Id.* at 308-09, 311-12, 319-24. Dr. Mitchell

diagnosed Kessler with major depressive disorder, chronic, severe; generalized anxiety

disorder; and PTSD, moderate to marked. *Id.* at 309. Dr. Mitchell opined that Kessler

had marked limitations in her ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a regular work schedule and maintain regular attendance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal work day and week without interruptions from her psychological symptoms; and set realistic goals and plan independently. *Id.* at 310.

The ALJ gave "limited weight" to Dr. Mitchell's opinions. *Id.* 29. She alluded to three vague reasons for this determination: (a) Dr. Mitchell did not address Kessler's use of alcohol; (b) Dr. Mitchell indicated that she expected Kessler's impairments to last 12 months with available treatment, meaning that they were not permanent; and (c) Dr. Mitchell relied on Kessler's self-reports, which the ALJ found not reliable. *Id.* None of these reasons withstands scrutiny.

### a. Failure to Discuss Alcohol Use

The ALJ's first reason for rejecting Dr. Mitchell's opinions was that "the use of alcohol was not even disclosed or acknowledged." *See id.* at 29. But, as explained with regard to Dr. Sanchez's opinions, this is largely irrelevant. *See supra* Part VII.B.1.b. The ALJ did not find that Kessler's impairments were affected by alcohol use. *See* AR at 24. Dr. Mitchell's failure to acknowledge or discuss Kessler's alcohol use is irrelevant. The ALJ thus erred in rejecting Dr. Mitchell's opinions on this basis.

### b. Non-Permanence

The ALJ's next reason for rejecting Dr. Mitchell's opinions was that Dr. Mitchell expected Kessler's impairments to last 12 months, which the ALJ took to mean that "the

vocational limitations associated with such impairments are not expected to be permanent." AR at 29. But a claimant need only establish that her impairments will last at least 12 months to be entitled to social security disability benefits. *See* 20 C.F.R. §§ 404.1509, 416.909. The ALJ's imposition of a "permanence" requirement has no basis in the law, and was not a legitimate reason to reject Dr. Mitchell's opinions.

### c. Reliance on Kessler's Self-Reports

The ALJ finally rejected Dr. Mitchell's opinions because they were too heavily based on Kessler's subjective self-reports. AR at 29. This reasoning fails for much the same reason it failed with respect to Dr. Sanchez's opinions. *See supra* Part VII.B.1.d. Dr. Mitchell conducted a clinical interview, mental status exam, and several psychiatric diagnostic tests. *See* AR at 308-09, 311-12, 314-22. These are all objective measures. *See Buck*, 869 F.3d at 1049. And psychological evaluations always depend to a large extent on the patient's self-reports, so they cannot be rejected on this basis in the same way other medical evaluations can be. *See id.* The ALJ's reasoning here was not supported by substantial evidence in the record, nor was it specific and legitimate, and therefore the ALJ erred in rejecting Dr. Mitchell's opinions for being too reliant on Kessler's self-reports.

### 3. The Court Need Not Address the ALJ's Treatment of Dr. Collingwood's Opinions

Because the Court finds that the ALJ erred discounting the opinions of Dr. Sanchez and Dr. Mitchell, it is not necessary to reach the issue of whether the ALJ erred in giving more weight to state agency consultant Dr. Collingwood. *Cf. Ghanim*, 763 F.3d

at 1160 (explaining that "[g]enerally, . . . the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician").  As explained below, on remand, the ALJ should reassess the opinions of Dr. Collingwood in light of the reassessed opinions of Dr. Sanchez and Dr. Mitchell.

### 4.     The ALJ Erred in Rejecting Ms. Street's Testimony

Ms. Street, Kessler's mental health therapist, submitted a medical source statement dated June 8, 2016.  *See* AR at 414-16.  Ms. Street opined that Kessler has extreme limitations in her ability to respond appropriately to work pressures and changes to the work setting.  *Id.* at 415.  Ms. Street further opined that Kessler had marked limitations in her ability to interact with the public, supervisors, and coworkers.  *Id.*  She explained that she had been seeing Kessler for two years, and that Kessler cancelled appointments on an irregular basis "due to extreme agoraphobia [and] intense anxiety [and] panic symptoms."  *Id.*

The ALJ gave Ms. Street's opinions "some limited weight."  AR at 30.  As the ALJ explained, "[t]he limitations in the residual functional capacity to simple, repetitive tasks and semi-skilled tasks for two hours at a time with normal breaks as well as slow-paced changes in a work setting are appropriate and account for any observations made by Ms. Street."  *Id.*

 In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*, 454 F.3d at 1053).  The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence.  *Molina v. Astrue*, 674 F.3d

1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted).  "Further, the

reasons 'germane to each witness' must be specific."  *Bruce*, 557 F.3d at 1115 (quoting

*Stout*, 454 F.3d at 1054).

      In explaining her decision to give only limited weight to Ms. Street's testimony,

the ALJ first noted that Ms. Street is not an acceptable medical source.  AR at 30; *see* 20

C.F.R. § 416.902(a).  That simply means that the ALJ was free to disregard any medical

diagnoses Ms. Street made.  *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014)

("[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis,

because 'medical diagnoses are beyond the competence of lay witnesses' to make.")

(quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  It is not a reason to

reject Ms. Street's testimony about Kessler's ability to work.

      The only reason the ALJ gave for rejecting Ms. Street's testimony was that Ms.

Street "clearly did not have full information on which to base an opinion."  AR at 30.  It

is true that Ms. Street admitted she had no "lab tests" or similar diagnostics to review.

*See id.* at 30, 415.  But, given the fact that Ms. Street was not competent to make medical

diagnoses anyway, that has no bearing on the accuracy and value of her lay observations.

And just like Dr. Mitchell, the ALJ did not explain what information Ms. Street did not

have that would contradict her testimony.  *See supra* Part VII.B.1.c.  The ALJ failed to

give a germane reason for rejecting Ms. Street's lay testimony, and therefore erred.

### 5.     The ALJ's Errors Were Harmful

      The ALJ's assessment of the medical evidence included numerous errors.  The

Court cannot say that the ALJ would have reached the same outcome if she had not

1    committed those errors, and thus the errors must be considered harmful. *See Stout*, 454

2    F.3d at 1055-56.

3    **C.    Scope of Remand**

4           Kessler asks the Court to remand this matter for payment of benefits. Pl. Op. Br.

5    at 15-18. The Court may remand for an award of benefits where "the record has been

6    fully developed and further administrative proceedings would serve no useful purpose."

7    *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*,

8    80 F.3d 1273, 1290 (9th Cir. 1996)). But remand for an award of benefits "is a rare and

9    prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*,

10   808 F.3d 1041, 1044 (9th Cir. 2017). If additional proceedings can remedy defects in the

11   original administrative proceedings, a social security case should be remanded for further

12   proceedings. *McCartey*, 298 F.3d at 1076.

13          The appropriate remedy here is remand for further proceedings. The Court is not

14   in a position to reweigh the evidence, nor can it conclude that the ALJ would be required

15   to find Kessler disabled after properly evaluating the evidence. *See Leon*, 880 F.3d at

16   1046-48 (affirming the district court's decision to remand for further proceedings, rather

17   than remand for payment of benefits, where the record revealed conflicts, ambiguities, or

18   gaps in the evidence).

19          On remand, the ALJ must reevaluate Kessler's testimony regarding her ability to

20   maintain concentration, persistence, and pace; reevaluate the opinions of Dr. Sanchez, Dr.

21   Mitchell, and Dr. Collingwood; reevaluate the lay testimony of Ms. Street; and conduct

22

further proceedings as necessary to reevaluate the disability determination in light of this evidence.

### VIII. ORDER

Therefore, it is hereby **ORDERED** that the Commissioner's final decision denying Kessler disability benefits is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 20th day of August, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge